## WALTERS v. THE C., R. I. & P. R. Co.

1. **Evidence:** DAMAGES: RAILROAD. In an action by an administrator for damages sustained on account of the death of an infant, it was *held* not to be error to admit testimony respecting the general nature of the employment of decedent's father, that the jury might consider its probable effect in determining the pursuits of decedent.

2. ———: ———: ———: CARLISLE LIFE TABLES. The Carlisle life tables were admissible to show the expectancy of life. The computation, however, was properly made from the date of decedent's death, and not from the age of twenty-one years, although recovery dated from that time.

3. **Negligence:** CONTRIBUTORY: RULE NOT APPLICABLE TO INFANTS. The rule respecting contributory negligence presupposes sufficient intelligence to know the existence of danger. Negligence cannot be imputed to an infant two years of age.

4. **Instruction:** ASSUMPTION OF FACT: PRACTICE. An instruction assuming the existence of a fact which is controverted, is erroneous.

5. **Negligence:** QUESTION OF FACT: RAILROAD. Whether or not the failure to stop a train, when the engineer saw an infant playing in the vicinity of a railway track, constituted negligence, was *held* to be a question of fact to be determined by the jury.

6. ———: CARE OF INFANT: DUTY OF PARENT. When the parents of an infant are unable to give him their personal care and intrust him to the supervision of a suitable person, the negligence of the latter cannot be imputed to the parents, and will not defeat a recovery for negligence resulting in the death of the infant.

7. **Damages:** ACTION: DEATH OF INFANT. In an action by an administrator for damages on account of the death of an infant, substantial damages may be recovered by the plaintiff, notwithstanding such recovery must be based upon the probable accumulation of an estate after the infant has reached the age of twenty-one years.

*Appeal from Scott District Court.*

SATURDAY, JUNE 19.

ON the 29th of June, 1871, John Walters, a child a little less than two years old, was upon the track of defendant, in Fifth street, in the city of Davenport, when a freight train of defendant ran over him, inflicting injuries of which he died in

a few minutes. In August, 1871, plaintiff brought this action as the administrator of the child's estate. A former trial resulted in a verdict and judgment for plaintiff for $750. At the June term, 1873, this judgment was reversed on account of errors in instructions respecting the measure of damages. At the October term, 1873, of the District Court, a second trial was had, resulting in a verdict and judgment for plaintiff for $4,000. Defendant appeals.

*Cook, Richman & Bruning*, for appellant.

*Grant & Smith* and *Davison & Lane*, for appellee.

DAY, J.—I. It is with much earnestness urged that the verdict is not sustained by the evidence; that it utterly fails to establish negligence upon the part of defendant, or the exercise of reasonable care upon the part of the parents of deceased. The evidence covers one hundred and twenty-eight printed pages, and it is not practicable to review it. We have perused it attentively, and feel satisfied that we would not be justified in setting aside the verdict of the jury upon the ground that the evidence does not support it. We think it furnishes data from which the jury might fairly find that the train was running at an unlawful rate of speed, and, also, that the engineer in charge of the train did not keep as constant and vigilant a look out as may reasonably be required in running along a much frequented street of a populous city. The evidence, we think, also fairly sustains the finding that those in charge of deceased were not guilty of contributory negligence.

II. The plaintiff was introduced as a witness, and after stating that the age of the child was a little less than two years at the time of his death, and that witness had been head sawyer for seventeen or eighteen years, and had worked in French & Davis' saw mill more than twelve years, the witness was asked the following questions: "State, if you please, what the usual compensation paid is, for services, for the kind you have been rendering for the past five or six years?" "State now whether the compensation of that

1. EVIDENCE: damages: railroad.

class of labor has been on the increase or not for the last eight or ten years?" "State what your occupation has been since 1871, down to the present time?" "Do you own a mill?" The defendant objected to all of these questions upon the ground of immateriality. The objection was overruled, and the witness answered that the usual compensation paid for such services as his was from three and a-half to four dollars a day; that the compensation for such labor had been on the increase until for the last five or six years, since which time it had not changed; that witness was sawing up to 1871; and that he now owns a mill.

The admitting of this testimony is assigned as error. The purpose for which this testimony was admitted is thus stated in the charge of the court: "In considering the amount to which the estate would be entitled, you may take into view the pursuits in which the father of the deceased is engaged, as indicating the general nature of the pursuits which deceased would have probably followed had he lived and his health and strength been preserved. It is not to be understood from this that the deceased would have followed the same identical business that his father does, but that it is likely his employments would be of the same general character, and of the same general class as his father's." It seems to us that there was no material error in allowing the jury to consider this evidence, and to give to it its due weight in determining what the business and earnings of deceased would probably have been, had he survived to manhood. Of course, such testimony is not very controlling in its character. There are a thousand circumstances which lead children into pursuits widely different from those of their parents. This fact, known to every observant person, should be allowed due weight by the jury, in estimating the proper reliance to be placed upon such testimony. Yet experience also teaches that children do very frequently pursue the same general class of business as that of their parents. There can, therefore, it seems to us, be no substantial prejudice in permitting, in a case of this kind, proof of the father's general employment, and in allowing the jury to give to it such weight and effect as experience and observa-

tion show it should receive. Proof that the deceased's father now owns a mill of his own was admissible, not for the purpose of showing that deceased would probably have owned one, too, but to show the fixed and permanent nature of his business, so that the probabilities of its influence upon the son might be considered.

III. The Carlisle life tables were admitted on behalf of the plaintiff, showing that the expectancy of life of deceased,

2. ——: ——: at the time of his death, was forty-seven and fifty-
——:Carlisle
life tables.   five-hundredths years. The defendant assigns as error the admitting of this evidence. The general competency of such testimony is not controverted, but a special objection is urged, growing out of the peculiar attitude of this case.

Upon the former appeal we held that the administrator can recover on account only of the damages resulting after the deceased would have attained his majority.

The objection of appellant to the testimony under consideration can be better expressed in the language of counsel. " When a person has *actually attained* any given age, and is in ordinary health and strength, we may reasonably say that experience proves that probably he will live a certain number of years. * * * * * * But, when we say that *if he should live* to be twenty-one years of age, *then* his expectancy would be a certain number of years, we are introducing a new element or hypothesis which no tables can meet."

If it had been assumed that the deceased, but for the accident, would have lived to be twenty-one years old, and his expectancy of life had been computed from that date, the objection of defendant would have been well taken. But this was not done. The expectancy of the life of the deceased was computed from his age at the time of his death. The fact that the administrator can recover nothing for the first nineteen years of this period does not affect the fact that, at the time of decedent's death, it was probable that he would have lived forty-seven and fifty-five-hundredths years. There was no error in the admission of these tables.

IV. Appellant assigns as error the giving of the third

Walters v. The C., R. I. & P. R. Co.

instruction. The portion objected to is as follows: " The rule that refuses damages to an individual, whose negligence, however slight, has, in any manner, contributed to produce the injury for which he sues, presupposes that he has reached an age when he has sufficient intelligence to know the existence of danger, and sufficient thought to protect himself from its consequences.

3. NEGLI-
GENCE: con-
tributory:rule
not applicable
to infants.

This rule, therefore, does not and cannot apply to an infant of two years or less; and if an infant of that age is found alone in a place where he is exposed to danger, and in a situation where he can easily be seen, it is the duty of every person approaching him to use all the care and caution that such person can command, to avoid injury to him, and if such person fail to use such care and caution, and injury results to the infant, from the want of such care and caution, such person is guilty of negligence, and would be liable to the infant for the injuries so caused, had such infant survived such injury." The doctrine of this instruction is humane and just. There is no little difficulty, and there is much judicial conflict in the application of the rules of negligence to cases of injuries sustained by children who have not reached years of discretion. The true rule seems to be, that if the parent or guardian of a child has taken reasonable care of him, and, notwithstanding the child escapes into a dangerous place under circumstances which impute no negligence of the guardian or parent of the child, then the child can be held only to the exercise of such care as is usual among children of his age. The rule which denies relief to one who is guilty of negligence, contributing to the injury, is based more upon considerations of public policy, which require that every one should guard his person against injury, than upon what is just to the defendant. It is quite clear that a rule which has its foundations in such considerations cannot, with any propriety, apply in the case of an infant of such tender years as not to have reached the age of discretion. See Shearman & Redfield on Negligence, Secs. 42-48, 49, and cases cited. If an adult should be seen upon a railroad track in a dangerous situation, the engineer in charge of an approaching train would not be justifiable in running

him down, although his being in that situation was an act of negligence. After becoming aware of his dangerous position, the engineer should use ordinary care, to prevent injury, and for a neglect to do so, the company would be liable. See Shearman & Redfield on Negligence, Sec. 36, and cases cited. True, the engineer would ordinarily have the right to assume that such person was possessed of the usual senses, and that he would heed the ordinary signals. And, under certain circumstances, the exercise of ordinary care might require no more than the giving of the customary signals of approach. But in the case of an infant two years old, the rule must be different. Even conceding that the rules of contributory neg-. ligence apply to him (which they do not, as we have seen), and that he is personally negligent in being upon the track, what is the duty of an engineer in charge of an approaching train, who sees him in this exposed condition? He cannot presume that the infant will heed any warnings, or that he will make any exertions for his own safety. All the exertions which are to be put forward must be employed by the engineer and others in charge of the train. Under such circumstances, can the demands of humanity be answered unless they, in the language of the instruction, " use all the care and caution that they can command? " The instruction, it will be observed, does not measure the care and caution required by the ability of any other person. It simply demands that the person approaching shall use all the care and caution *he* can command. Ordinary care varies with the circumstances. What would be ordinary care in the case of an adult, might be gross negligence in the case of a young child. Fairly construed, the instruction under consideration, it seems to us, is not erroneous.

V. In the fourth instruction the court directed the jury as follows: "If, at the time the defendant left the pavement, and

4. INSTRUC-TION: assump-tion of fact: practice.

started across the street in the direction of the railroad track, it would have been impossible to stop the train or so check the train as to avoid the accident, had it been running at the authorized speed, that is, six miles an hour, then notwithstanding the rate of speed at

which the train was running may have been greater than that allowed by the ordinance of said city, and would, therefore, be negligence, yet unless the accident is fully traceable to such excessive speed, and could have been avoided, had this speed of the train been no greater than that prescribed by the ordinance, then the accident would not be the result of such excessive speed, and the defendant would not be liable therefor in this action." The evidence shows that on Fifth street, where the injury occurred, the railroad has two tracks, and that the parents of deceased resided north of and fifty feet from the place of injury. The point where the injury was inflicted was in plain view of the approaching train for twenty-six hundred feet. The child was injured on the south rail of the south track. There is no evidence that it was seen by any one from the time it left the premises of the parents until it was seen on the track where injured. The theory of defendant is that it had been lying close to the track in the sand, or concealed by a pile of stone, and that it rose and stepped upon the track just at the moment that it was discovered. The instruction ignores this theory of defendant. It assumes that the deceased left the pavement and started across the street in the direction of the railroad track when the train was in the vicinity, and it was proper to use exertions to check it. It is plain that if the child traversed this distance of fifty feet in view of those in charge of the train, the conclusion that defendant was negligent is almost inevitable. The defendant must have been prejudiced by an instruction which assumes such to be the facts.

VI.  Defendant assigned as error the giving of a portion of the fifth instruction, as follows: "It is the duty of those 5. NEGLIGENCE: question of fact: railroad. intrusted with the running of railway trains to keep a reasonably vigilant look out, and to use all proper care and caution to avoid injuries to persons who may be on the streets through which the track of the road passes. If the deceased was a child of two years old or less, and was unattended and could have been seen while on the track, or in the street, and in the immediate vicinity of the track, by those in charge of the train in time to stop it, then it was their duty

to stop the train, and a failure to so stop would be negligence.''
It cannot, we think, as matter of law be declared to be negli-
gence to fail to stop a train when a child is simply seen in the
immediate vicinity of the track.   Negligence is usually a
question of fact.   If the position and employment of the
child is such as to furnish a reasonable ground to apprehend
that it will likely come upon the track and be subjected to
injury, then reasonable prudence and care would require the
stopping of the train, if necessary to avoid the injury.   But
whether the circumstances are such as to reasonably require a
resort to such precautionary measures when the child is not
upon the track, nor in a condition to be injured if he does not
approach nearer the track, the jury should be allowed to
determine as a fact in view of all the surrounding circum-
stances.

VII.   In the sixth instruction the court charged that if the
parents of deceased took no precautions to keep the deceased
in the yard, but suffered it to go into the street at
its own will and pleasure, unwatched and uncared
for, and the injury would not have happened but
for this want of attention and care, then the defendant would
not be liable, and then proceeded as follows:  "If, however,
the father of the deceased was, at the time of the injury, a
laboring man, and its mother was confined to her room by
sickness, and they had placed the deceased in charge of a
proper person to take care of and watch over it, with fences
and gates properly secure and fastened, this would be sufficient
care."   It is objected to this branch of the instruction that
the duty to keep a child out of danger requires as much exer-
cise of care by a person in one condition of life as by a person
in another condition.   This branch of the instruction is not
objectionable.   Law, as a rule of human conduct, should be
adapted to human necessities and conditions.   In so far as it
fails of such adaptation it becomes unjust and unreasonable.
It certainly cannot be claimed that a laboring man, or his
wife, though confined to her room by sickness, must give their
personal attention and oversight to their infant child, in order
to avoid the imputation of negligence.   Certainly when they

6. ———: care
of infant:
duty of pa-
rent.

provide fences and gates properly secure and fastened, and place the child in care of a proper person to take care of and watch over it, they cannot be personally charged with negligence. See *Alton Railway Co. v. Gregory*, 58 Ill., 226.

This instruction further proceeds as follows: "And if, under these circumstances, the deceased happened to get out of the yard, and into the street without the agency or knowledge of its parents or the person to whose care it had been committed, and while so in the street the injury occurred which resulted in its death, this would be without the fault of the parents and they could not be charged with negligence." The circumstances referred to are that the father and mother are both so situated that they cannot reasonably be required to give their personal attention to the child, and they have placed it in charge of a proper person. It is objected to this branch of the instruction that the person in charge of the child may be negligent, if it escapes into the street without such person's knowledge. And of this proposition there can be no question. When the parents then cannot give their personal supervision to a child, and they place it in charge of a proper person, and he acts negligently, is such negligence to be imputed to the parents? If the rule denying relief to a party who has been negligent arose out of consideration for the defendant, this question must be answered in the affirmative, for if the injury to the deceased was contributed to by others than the defendant, the result as to defendant is the same, whether this contributory negligence arose from the acts of the parents, or from another to whose custody the parents had entrusted the child.

But, as we have already seen, this rule has its primary foundation upon grounds of public policy, and is not intended especially for the benefit of the defendant. When, therefore, the parents, who are primarily intrusted with the protection and care of their infant children, and who are entitled to the pecuniary compensation which the law allows for a wrongful act resulting in their death, exercise reasonable and ordinary care, the public interests are subserved, and there is no good reason why the negligence of the person in charge of the child

should be imputed to the parent, and through the parent to the child itself.

VIII.  To the eighth, ninth and tenth instructions defendants object because they permit the jury to find a verdict for more than nominal damages.  The objection we understand to be that, inasmuch as the administrator could recover only on account of so much of the expectancy of life as remained after majority, and it is uncertain that the child would have lived to be twenty-one years of age, or if he had that he would have accumulated any estate, therefore, only nominal damages can be recovered.  The only authority cited in support of this doctrine is *Lehman v. The City of Brooklyn*, 29 Barb., 234.

7. DAMAGES:
action: death
of infant.

If this position be tenable, no damages based upon the expectancy of life could ever be recovered.  In no case could it be certainly affirmed that the deceased, if he had not met with the injury which caused his death, would not have died the next day from some other cause.  That a child two years old will live forty-seven years longer may be just as certain as that an individual twenty-five years old will live out the period of his expectancy of life.  And there is no legal impropriety in the allowance of substantial damages for the death of such a child.  Of course, in the estimation of damages the jury must properly regard all the contingencies which affect the accumulation of an estate.  And this they were directed by the court to do in this case.  See *City of Chicago v. Mayor*, 18 Ill., 349; *Oldfield v. New York & Harlem R'y Co.*, 14 N. Y., 310; *McMahon v. The Mayor of New York*, 33 N. Y., 642; *O'Mara v. Hudson River R'y Co.*, 38 N. Y., 445; *Baltimore & Ohio R. R. Co. v. Kelly*, 24 Md., 271.

We discover no other point in the case which demands special notice.  For the errors already considered the judgment must be

REVERSED.

BECK, J., *dissenting.*—I am unable to concur in the conclusion reached in the foregoing opinion, reversing the judgment of the District Court; in my opinion it should be affirmed.

The only error which, in the opinion of my brothers, is

found in the case is based upon the fourth instruction. Their views are set out in the 5th point of their opinion. In my judgment error prejudicial to defendant is not shown by the brief extract from the court's instruction, set out in the opinion, even though it fails in my judgment, to present the true effect and purpose of the court as contained in the whole instruction, and the one immediately following it directed expressly for the guidance of the jury as to the law upon the same subject. But without attempting to justify the rule of the extract from the fourth instruction given in the opinion of the majority, I will proceed to quote the whole instruction and the following one, remembering that instructions, in order to determine their correctness, as all other writings, when their true meaning and force are in question, must be considered as a whole.

"4. If you find that the ordinances of the city of Davenport, at the time of the alleged accident, prohibited trains of cars from running at a greater speed than six miles an hour, on the tracks within the corporate limits of the city, and that the train of cars, which struck and caused the death of deceased, was, at the time of such accident, running faster than such ordinances authorized, this would be negligence. But while this would be negligence, the defendant would not be necessarily liable therefor in this action, unless the death of deceased was directly attributed to the rate of speed at which the cars were running. If, at the time the deceased left the pavement, and started across the street in the direction of the railroad track, it would have been impossible to stop the train, or to so check the train as to avoid the accident, had it been running at the authorized rate of speed—that is, at six miles an hour—then, notwithstanding the rate of speed at which the train was running may have been greater than that allowed by the ordinances of the said city, and would, therefore, be negligence, yet, unless the accident is fully traceable to such excessive speed, and could have been avoided, had the speed of the train been no greater than that prescribed by the ordinances, then the accident would not be the result of such excessive speed, and the defendant would not be liable therefor in

this action. The rule of law and the instruction of the statute being that, although a party may be guilty of negligence, yet, unless the injury complained of has been produced by this negligence, such negligence furnished no ground of action to the parties injured, or his representatives."

" 5. It is the duty of those intrusted with the running of railway trains to keep a reasonably vigilant look-out, and to use all proper care and caution to avoid injuries to persons who may be on the streets through which the track of the road passes. If the deceased was a child of two years old or less, and was unattended, and could have been seen while on the track, or in the street, and in the immediate vicinity of the track, by those in charge of the train, in time to stop it, then it was their duty to stop the train, and a failure to stop would be negligence; so, also, it would be negligence if the train could not be stopped in time to prevent the injury, because of the excessive rate of speed at which it was then traveling—that is, at the rate of speed greater than that authorized by the city—and if, in either case, injury was occasioned which resulted in the death of deceased, then the act producing it was a wrongful act, such as the statute quoted contemplates, and the defendant would be civilly liable therefor to the administrator of the deceased, provided the parents or those having the care of said deceased, exercised such ordinary watchfulness over its movements as its age and the proximity of its residence to external danger required, and their condition and circumstances in life admitted. If, however, the train was running at a reasonable rate of speed, and was under proper control and the deceased had so placed itself, or was so situated in the street, that those in charge of the train could not, with reasonable vigilance, see it in season to avoid the accident, then they would not be guilty of negligence, and the defendant would not be liable in this action."

These instructions are explicit and easily to be understood, though objectionable somewhat on the ground of prolixity and verbosity. But with these things we have nothing to do, if the law embodied in them be sound. The rules they announce are these:

1. The running of the train at a speed greater than that prescribed by the city ordinances would be negligence.

2. But, as an exception to this rule, defendant would not be liable for such negligence unless the death of the child was directly caused thereby, that is, by the unlawful rate of speed. This exception, which is in defendant's favor, is stated in other and more explicit words in the following part of the instruction to this effect: If the train was running at an unlawful speed, and the accident could not have been avoided, if it had been running at the rate allowed by the ordinance, defendant is not liable. And here is introduced the part of the instruction that my brothers consider objectionable, which is to the effect that if the child was on the street, and had left the pavement and was walking toward the track, and at that time it would have been impossible to check the cars under the conditions above mentioned, defendant would not be liable.

But, it is said that the hypothesis stated of the child's leaving the pavement while the train was so running, is not supported by the evidence; that the evidence is silent upon the subject, and no account is given therein of the whereabouts of the child for some time before it was struck by the cars. Let this be admitted. But the instruction in that view is not unfavorable to defendant. It states a hypothetical case in which defendant would not be liable. How can such a statement prejudice defendant? It is different from a hypothetical case in which defendant would be liable. I cannot conceive that prejudice would result to defendant by the statement of the court that, under a certain state of facts, it would not be liable.

But there was, in fact, evidence before the court upon which the jury may well have found the very facts hypothetically stated in the instruction. The parents of the child lived on the north side of the street; it was killed on the south track of the railroad. It wandered away from home, and must of necessity have crossed the pavement, the street and the north track of the railroad. It was out of the sight of those watching it but a very brief time—a very few minutes, ten or fifteen; the child was less than two years old. There was a fence

around the house of its parents. When last seen before its death, it was in a back room of the house. It escaped from the house, out of the yard, walked about fifty feet and met its death in ten or fifteen minutes from the time it was last seen. The train, at its ordinary rate of speed, would be from six to eight minutes in running over that part of the road from which the engineer could have had a full view of the place of the accident and of the child if on the street. Certainly it cannot be said that there was no evidence from which the jury could have found that, " at the time the deceased left the pavement and started across the street in the direction of the track, it would have been impossible to have stopped the train or checked the train so as to avoid the accident, had it been running at the authorized rate of speed." These are the facts stated hypothetically in the instruction. The same character of evidence that would authorize the finding of the facts would be sufficient to justify a contrary finding.

The instruction was properly given, because it was intended to meet the plaintiff's theory of the facts of the case.

The instruction presents, with equal fairness, the defendant's theory as stated in the opinion of the majority, namely, that the child was concealed near the track when the train was approaching, and suddenly stepped before it. The last sentence of the fifth instruction presents this theory by a hypothetical case to the jury, just as the fourth does plaintiff's, and clearly and correctly announced the law as applied thereto. The statement, therefore, in the opinion of my brothers, that defendant's theory was ignored, is not correct.

As the child was not seen after it left the house by any witness who testified, the jury were left to determine by the instruction, from all the circumstances of the case, whether the theory of plaintiff or defendant was more consistent with the evidence and the experience of life.

In my opinion, the instructions are correct and free from the objections charged against them. Neither do I see how an intelligent and honest jury could be more influenced by the hypothetical statement of facts claimed by plaintiff, than by a like statement of those claimed by defendant. In other

words, if the court may state a rule of law applicable to the facts claimed by defendant, viz: that the child lay concealed from the view of the engineer of the approaching train, and stepped on the track just before it, there was no violation of law in stating the plaintiff's theory for the like purpose of applying the law thereto.

The fifth instruction I do not think is objectionable. A child of two years of age is not endowed with reason which enables it to fly from danger. Whatever instinct it does possess, giving it consciousness of present peril, will not guide it away therefrom, but is just as likely to lead it, when alarmed, directly to danger and harm. This is the daily experience of almost all men. The child being in the "*immediate vicinity*" of the railroad—*near it*, should have been as readily expected to run before the train as away from it. This the engineer well knew, and was negligent if he did not operate his train in view of the fact, and, in order to secure safety of the child, stop until he saw the child in a place of safety.

I am thoroughly convinced that the judgment of the court below is without error, and ought to have been affirmed.