Appellee brought an action against appellant to recover damages for the negligent death of his infant daughter. It is alleged that the fatal accident took place about 4 P.M. on a clear day in February, about two miles south of the Town of Largo in Pinellas County on Public Highway No. 19. The case was tried on these pleas to the declaration. (1) Not guilty, and (2) contributory negligence on the part of the child's custodian. The jury returned a verdict for the plaintiff, on which final judgment was entered. A new trial was denied and the defendant appealed.
Appellant's primary reliance for reversal is directed to the refusal of the trial court to permit him to introduce the testimony of Patrolman Peacock and Justice of the Peace Baker, for the purpose of impeaching the evidence of Mrs. Aletha Smith.
Mrs. Smith was the main witness for the plaintiff and the only eye witness to the tragedy. Her testimony will be summarized later. The testimony of Peacock and Baker was proffered to show that on the day after the accident, Mrs. Smith made a statement to them which was contrary to her evidence at the trial, of which she had no recollection, but it appears that she was taking sedatives and appeared to be suffering from shock at the time.
The witnesses Peacock and Baker investigated the accident the day after it occurred and the alleged statement to them by Mrs. Smith was to the effect that while she was waiting for a chance to cross the highway, the child pulled away from her and ran into the line of traffic. The purpose of the attempted impeachment of Mrs. Smith's testimony was to develop the fact that she was custodian of the child, that the child's parents were guilty of contributory negligence and that Mrs. Smith's negligence was the negligence of the parents.
It is true that Section 90.10, F.S.A. provides for the impeachment of witnesses by the adverse party under certain circumstances. The admission or rejection of impeaching testimony is within the sound discretion of the trial court. Mungin v. State, 109 Fla. 310, 147 So. 577. We do not think the rejection of the proffered testimony was harmful. The defendant's wife testified that Mrs. Smith twice exclaimed that "she pulled away from me." Having reference to the deceased child the proffered evidence was cummulative and the jury had the advantage of it. They also had the advantage of Mrs. Smith's testimony with that of other witnesses.
Defendant testified in substance that he was driving north on Highway 19, at about forty or fifty-five miles per hour on his side of the road, that he came to a sign facing northbound traffic warning travelers to "drive slow — County Home", that he passed the cross-road leading to the County Home, that he resumed his original speed and drove northward for an additional half mile when he came to private driveways and a trailer park, that traffic was fairly heavy in the opposite direction, that he did not see the little girl before the impact, but that just after another car had passed going southward, blocking his view to the left front, he heard a thud and saw the little child had come out from behind the other car and had been struck by his car and thrown forward and to the left of the highway, but that he was in his proper lane at all times and that after the accident he applied his brakes and pulled off the shoulder to the right.
Mrs. Smith's version of the accident was in substance, that she secured permission from the parents of the little girl to take her across the highway from the trailer park to a small grocery store to get some ice cream, as she had done many times before. When this was done she and the child walked northward along the east side of the highway, the child on her right, but that she was not at any time holding the child's hand, that they reached the south end of the mail boxes, when she looked to the northward and no traffic was approaching, "so I started about, just about a short distance on the highway, and little Suzanne was just about a step ahead of me, and I *Page 636 
looked up to the South, and the car seemed to be far away, and, oh, just like that he twisted by and just took her right out from in front of me, and the wind sort of brushed me and my skirt."
The statements of the defendant and Mrs. Smith were contradicted by the evidence in some respects. There is other evidence which shows that the child was knocked about sixty feet and that it was killed instantly. The evidence also shows that the community where the accident took place had a store, a county home, a trailer park and some residences. The road was straight, was twenty feet wide so the defendant had ten feet open driveway to his left and ample room to swerve to the right if danger appeared, yet he testified that he never saw the child. The jury had all the evidence before them. Whether or not there were hazards that made the death accidental or the result of defendant's negligence was a jury question and we find ample support for their finding.
We are also of the view that there was no basis on which Mrs. Smith personally or as the agent of the deceased child's parents could be charged with contributory negligence. Contributory negligence results from the mutual, concurring and contemporaneous negligence of the defendant and the plaintiff or their agents. A three year old child is incapable of committing contributory negligence. When parents walk along the highways with their children they are not expected to carry them on a leash or to restrain them by force. They are required to exercise reasonable care for their safety and motorists are required to govern themselves accordingly.
Questions two, three and four have to do with the admission in evidence of a large "Drive Slow" warning sign and the charges of the court with reference to it and with reference to contributory negligence.
The charge as to contributory negligence was requested by the defendant and was a fair charge. The charges as to the warning signs along the highway were amply supported by Dehon v. Heidt, Fla., 38 So.2d 39, and other decisions of this Court, and we find no well founded objections to them. In driving through a community where warning signs, County Home, trailer parks and other evidences of habitation are obvious, motorists are on notice that they are driving a dangerous instrumentality and required to keep it under complete control. They are further on notice that the public highways through inhabited areas are not speedways, that people may still be walking or diving them in horse drawn vehicles, that children may be playing near them and that when they ignore these things they do so at their peril.
When driving the public highways a cautious speed is relative. If a motorist is driving the salt flats at Bonneville, the speedway at Indianapolis or some other speedway, he is warranted in pulling the throttle wide open to see just how fast he can make her go, but that is not the rule when driving through a populous community. In many places it is now necessary to bring one's car down to the speed required in passing schools and through the city. The very purpose of a good highway is business and pleasure and this necessarily requires careful driving consistent with conditions along the highway. Any one who in driving the highway kills a child without knowledge of what he has done is driving too fast.
The concluding question challenges the judgment on the ground that it is excessive.
In Miami Dairy Farms v. Tinsley, 115 Fla. 164, 155 So. 852, this Court held that recovery in a case like this should be reasonable recompense for parental pain and suffering, including fair compensation for services that might reasonably be expected the child would render the parents from the date of the accident to the date of its majority. Both elements of damages, while well recognized, are largely speculative and difficult of determination, but no one's estimate is better than a jury's.
In this case the amount allowed was $5500.00. It was apparently awarded for parental pain and suffering. There is no sufficient predicate urged to overrule the trial court and the jury on this point. Those *Page 637 
who have not brought a child into the world and loved it and planned for it, and then have it suddenly snatched away from them and killed can hardly have an adequate idea of the mental pain and anguish that one undergoes from such a tragedy. No other affliction so tortures and wears down the physical and nervous system. Psychosomatic illness of a serious nature may follow. The emotions may be unstrung, the nerves put on edge and the end effect may be a period in a rest home, a mental hospital, serious physical derangement and sometimes death. Damage for mental pain and suffering is one of the late developments in the law and its potentialities are not restricted as they formerly were because so much has been learned of the evil consequences that flow from mental injury. When the writer of this opinion was admitted to the bar, $5000.00 might have been an exorbitant verdict in a case like this, but the mind has been explored and so much learned of its pathology that damage to it may now merit much larger verdicts than they have in the past. Motorists are charged with knowledge of these potentials, they are proper to be considered in a case of this kind and a verdict in contemplation of them will not be disturbed unless shown to be grossly erroneous.
The judgment appealed from is therefore affirmed.
Affirmed.
ADAMS, C.J., and CHAPMAN, HOBSON and ROBERTS, JJ., concur.
THOMAS, J., dissents.
SEBRING, J., not participating because of illness.