## TREVINO v. ARMADI.

No. 62-L-1189.

Circuit Court, Dade County.

February 24, 1964.

Richard H. Reynolds, Coral Gables, for plaintiff.

Dean, Adams & Fischer, Miami, for defendant.

JOE EATON, Circuit Judge.

*Order of court entered simultaneously with final judgment:*
A four year old illegitimate child was living with her maternal grandmother in Florida while her mother was working in another state. The child was killed, while crossing a street, as a result of the negligence of the defendant motor vehicle operator. The grandmother was negligent in allowing the child to cross the street on an errand. The negligence of both the defendant and the grandmother proximately contributed to the child's death. There is no showing in the record that the mother was negligent in entrusting the child to the care of the grandmother, that the mother had any reason to believe that the grandmother was incapable of caring for the child, or that the mother knew or should have known that the grandmother had deviated or would deviate from the degree of care dictated by consideration of the child's safety.

The mother brought this action upon the death of her child. (The mother is the proper party to bring this action, the child being illegitimate, the father not having custody and not having supported the deceased child.)

The question presented to the court, therefore, is whether or not the negligence of the grandmother is imputed to the plaintiff as a matter of law, there being no showing that the plaintiff should be barred by virtue of her own conduct in entrusting the child to the grandmother's care.

The reported Florida cases do not directly answer the question. Our appellate courts apparently have not been called upon to write an opinion in a case involving death of a minor child while the child was in the custody of a member of the family other than one of the parents of such child.

Aside from traditional agency situations and joint enterprise situations (and situations arising under the dangerous instrumentality doctrine\*), the defense of imputed negligence has not been generally accepted in Florida. In this state, the relationship of husband and wife does not, in and of itself, constitute a sufficient basis upon which to impute to wife or to husband negligence of the other. Florida follows the great weight of authority in this country to the effect that, in an action for wrongful death of a child, the negligence of one parent will not bar the right of recovery of the other parent upon the basis of the marital relationship alone. Florida takes that position notwithstanding its unique "death" statute where the father asserts a claim of pain and suffering for the mother and where the demand is indivisible.

The Florida case of Klepper v. Breslin, 83 So.2d 587, temporarily superimposed an aura of confusion upon Florida's well established approach to imputation of negligence absent traditional agency and joint enterprise situations. Mr. Justice Drew, in his dissent there, construed the majority opinion as a departure from Florida's established course against imputation of negligence as a matter of law. The authors of two law review articles (Miami Law Quarterly, Vol. X, No. 4, p. 591, and 9 U. of Fla. Law Review 230) thought that Florida may have receded from its previous weight of authority position in the majority opinion of the Klepper case. An able trial judge, in Ward v. Baskin, 94 So.2d 859, considered the Klepper case and reasoned that Florida had receded. However, in Ward v. Baskin, our Supreme Court welcomed the opportunity to cleanse the atmosphere and to keep Florida on its established course. A reading of the two cited cases makes it clear that the mere relationship of husband and wife does not, in and of itself, cause the negligence of a wife in caring for a child to be imputed to the husband father; that the wife (notwithstanding the provisions of our death statutes) is not, as a matter of law, the agent of the husband; that, *if the facts so justify*, the defense of contributory negligence may be asserted against the father grounded upon the negligent acts or failure to act of the wife and mother; that a husband may be barred from recovery if he entrusts his child to the custody of the mother "knowing that the mother was failing to make use of the precautions which he had provided for the child's safety" and having done "nothing to prevent such deviations from the degree of care dictated by consideration of the child's safety," (which tends toward the proposition that the father's knowledge and failure to act constituted contributory negligence on his part.)

---

[\*A discussion of imputed negligence regarding ownership of motor vehicle, proprietary interest and control, etc., in automobile cases would be inapplicable to the subject matter of this order.]

It is Klepper and Ward v. Baskin which lead us to Florida's references to the relationship between a plaintiff in a death case and the deceased child's custodian who was not a parent. Here again, confusion arises—by way, in each instance, of dicta. Each of the above cases allude to Winner v. Sharp, 43 So.2d 634. In that case, a child was killed while in the temporary care of an adult friend who was neither employed to care for the child nor a member of the family. The defendant plead contributory negligence on the part of the child's custodian. The jury was given a charge on contributory negligence—apparently having to do with weighing the custodian's conduct as a possible bar to plaintiff's recovery. The plaintiff recovered damages. The court wrote on page 636, as follows—

"We are also of the view that there was no basis on which Mrs. Smith personally or as the agent of the deceased child's parents could be charged with contributory negligence. Contributory negligence results from the mutual, concurring and contemporaneous negligence of the defendant and the plaintiff or their agents."

The jury did not find contributory negligence on the custodian's part so the case does not stand as a pronouncement of the law in this regard. However, it certainly is an implication that contributory negligence of the custodian of a minor child could be imputed to the plaintiff parent in a death action. The Klepper reference to Winner v. Sharp, dicta again, reads as follows (p. 593)—

"In Winner v. Sharp, Fla. 1950, 43 So.2d 634, we recognized the contributory negligence of a custodian of a minor child as constituting a defense to an action by the father for the wrongful death of a minor."

That is pretty clear language—dicta though it may be.*

However, we now go to Ward v. Baskin where the court set about to clear the confusion stemming from Klepper (Mr. Justice Drew concurred in the judgment of Ward v. Baskin). In that clarifying opinion, we read the following interesting reference to Winner v. Sharp on page 861—

"In referring to our opinion in Winner v. Sharp, Fla. 1950, 43 So.2d 634, a case involving the defense of contributory negligence of a third party custodian of a minor child, we pointed out that we were not intending to hold that the mother

---

[*Justice Drew's dissent, in Klepper case reads, in reference to Winner v. Sharp, "Instead of imputing that negligence (child's custodian) to the plaintiff, the *court did the contrary.*" (Italics added.)]

occupies the position of a third party custodian whose contributory negligence *might* bind the parents *who employ her.*" (Italics added.)

This is all dicta, but it appears to me that the court was attempting to clarify the Winner v. Sharp dicta and the Klepper dicta regarding custodians and to get Florida back on its course that negligence may be imputed as a matter of law in traditional agency cases and joint enterprise cases. There is nothing in Winner v. Sharp having to do with a custodian having been *employed* to care for the child—it is clear that such was not the case.

As to the question before us then, we might summarize as follows—

(1) Except in traditional agency cases and joint enterprise cases, the defense of imputed negligence has not been generally accepted in Florida.

(2) Contributory negligence of a mother is not imputed to the plaintiff father as a matter of law by virtue of the relationship of husband and wife.

(3) There is no reported Florida case dealing with whether or not contributory negligence of a custodian grandmother or other member of the family would be imputed to a plaintiff in a death case.

(4) Dicta, later sought to be clarified, would indicate that contributory negligence of a custodian, other than a parent, might be imputed to a plaintiff in a death case as a bar to recovery.

Should this court then, in the absence of precedent within the state, follow the weight of authority (as will later be shown in this writing) on the question before us and thereby rule in a manner consistent with Florida's general position in the premises, or should it attend itself to the dicta having to do with custodians? To be influenced by the dicta would be to compound the confusion it has created. To rule consistently with Florida's approach to the general proposition would be to adhere to the long established Florida position that negligence is imputed as a matter of law in traditional agency and joint enterprise situations and to accept the clarifying efforts advanced in Ward v. Baskin.

If the negligence of a wife in Florida is not imputed to a plaintiff father as a matter of law by virtue of the marital relationship, and if it may be imputed only "if the facts so justify", then surely the negligence of a grandmother cannot be imputed to a plaintiff unless the "facts so justify." This must follow when one considers the unique Florida death statute where a husband may recover for his wife's pain and suffering on an indivisible demand

and when one considers that a man and his wife constitute an entity in the law. (See Judge Parks' dissent in Ward v. Baskin). Under our statute, a husband ordinarily is the plaintiff in a death case. If a wife is not the agent of her husband in caring for their child—if the husband does not exercise control over his wife by virtue of the relationship—then how could the law in its wisdom be that a mother-in-law is, as a matter of law, the agent of a plaintiff husband, that a man exercises control over his mother-in-law by virtue of the relationship? There appears to be no rational basis for having a different rule regarding imputed negligence when a child is entrusted to a member of the parents' family and when a child is entrusted by one parent to the other.

Furthermore, it appears to me that a grandmother who is caring for her grandchild stands closer to the parent-child relationship than she does to a friend custodian-child relationship.

The following appears to me to be an accurate statement of what the Florida law must be if Florida's position in this area of the law is to be consistent and in accord with reason—

(a) If one employs another to care for his child, that employee is an agent and in the law, is within the control of the master. A parent may not recover in a death case if his agent's negligence proximately contributed to his child's death. (The same result would be reached in joint enterprise situations.)

(b) If one entrusts his child to another, whether his wife, a member of his family, or a friend, when he knows, or by the exercise of reasonable care should know, that the person to whom the child is entrusted is likely to deviate from the degree of care dictated by consideration of the child's safety, then he may not recover in a death case if the custodian is negligent and if such negligence proximately contributed to the child's death. In other words, a parent is held to the duty of exercising reasonable care in choosing the custodian of his child.

Whether the above paragraph (b) is an imputed negligence concept or a mere negligence concept is not for me to say (considering the Klepper case). It may be that negligent entrustment of a child would be one of the links in the chain of causation if the child is killed through the negligence of another. It may be that negligence of a custodian would be imputed to the plaintiff because of knowledge possessed by the plaintiff as to the custodian's lack of reliability. In either event, the result would be the same.

The dicta (regarding imputation of a custodian's negligence to a plaintiff father) found in the Klepper case (before it was "cleaned up" in Ward v. Baskin) apparently grew out of a line of cases that now constitute the minority view in this country.

(The dicta in Ward v. Baskin, which refers to Winner v. Sharp, represents the majority view now that the traditional agency concept has become a part of the statement—through the use of the words "might bind the parents who employ her.")

The doctrine of imputed negligence, as taken from the British courts, is an application of the old Roman doctrine of "identification". It was first adopted in the United States in 1878 by the state of Wisconsin and was thereafter adopted by many other states, most of which have later rejected it. "The evolution of the doctrine of imputed negligence has been such as to be almost revolution against the doctrine. The great majority of jurisdictions in the United States accept the position that imputed negligence finds footing only in cases where an express or unequivocal agency exists." (Union Traction Co. v. Gaunt, 135 N.E. 486).

By 1923, twelve states had adopted the general rule that the contributory negligence of the custodian of a child (persons to whom a child was entrusted other than its parents were characterized as custodians regardless of whether or not there was a master-servant relationship or joint enterprise relationship) proximately contributing to the child's injury or death was imputable to the parent plaintiff so as to preclude recovery by or for the benefit of the latter in an action for such death or injury where the parent's own negligence would have that effect, (23 ALR 655). (At the same time, the weight of authority in this country was that negligence of one parent was *not* imputed to the other as a matter of law.) A considerably lesser number of states took a contrary position on the imputation of a custodian's negligence as a matter of law. One of those states was Iowa. In the 1875 Iowa case of Walters v. Chicago R.I. & P.R. Co., 41 Iowa 71, an action by the father, as administrator, to recover damages for the death of his child, the court took the view that when parents cannot give their personal supervision to the child, place it in charge of *a proper person*, and that person acts negligently, such negligence cannot be imputed to the parents. There, the court reasoned—

"When the parents, then, cannot give their personal supervision to a child, and they place it in charge of a proper person, and he acts negligently, is such negligence to be imputed to the parents? If the rule denying relief to a party who has been negligent arose out of consideration for the defendant, this question must be answered in the affirmative, for, if the injury to the deceased was contributed to by others than the defendant, the result as to defendant is the same, whether this contributory negligence arose from the acts of the parents or from another to whose custody the parents had entrusted the child. But, as we have already seen, this rule has its primary foundation upon grounds of public policy, and is not intended especially

for the benefit of the defendant. When, therefore, the parents, who are primarily entrusted with the protection and care of their infant children, and who are entitled to the pecuniary compensation which the law allows for a wrongful act resulting in their death, exercise reasonable and ordinary care, the public interests are subserved, and there is no good reason why the negligence of the person in charge of the child should be imputed to the parent, and through the parent to the child itself."

The Walters case was the forerunner of the present majority view. Its reasoning is consistent with Klepper and Ward v. Baskin with reference to the degree of care required to be exercised in choosing the person who is to supervise the activities of one's child. Those jurisdictions that have clung to that 1923 majority position have done so on the proposition that there is privity between a parent and a custodian, that, as a matter of public policy, an agency relationship exists by virtue of the entrustment whether or not the parent has the right to control or does control the conduct of the custodian. By and large, those states which have continued to maintain that view are among the states that make up the minority view that negligence of one parent is imputed to the other as a matter of law—by virtue of the relationship of man and wife. By and large, the states that have adopted the view expressed in the early case of Walters v. Chicago R.I. & P.R. Co. as to imputation of a custodian's negligence are among the states that follow the weight of authority rule expressed in 2 ALR 2d at page 805, as follows—

"Attention is called also to the fact that by the great weight of modern authority the negligence of one spouse is not to be imputed to the other unless he or she is the agent of the other in the matter at hand, or they are jointly engaged in the prosecution of a common enterprise. See 38 Am.Jur. 925, 926, Negligence, §239. From this it follows that in an action against a third person for the death of a child the contributory negligence of one of the parents will not be imputable to the other, so as to preclude recovery by or on behalf of the parent who is not negligent merely because of their relationship as husband and wife, and absent any partnership, joint undertaking, or community of interest."

So the evolution away from the doctrine of imputed negligence absent traditional agency and joint enterprise has been reasonably consistent. The states of this country generally have either adopted the majority view of imputation of negligence only in joint enterprise and traditional agency relationship when dealing with "plaintiff-custodian" relationships as well as husband-wife relationships, or they have, in the interest of consistency, adopted the minority view that contributory negligence of a parent is imputed to the other parent as a matter of law by virtue of the re-

lationship itself and that contributory negligence of a custodian is imputed to the plaintiff parent as a matter of law by virtue of the very relationship itself.

This trend toward consistency of position within the various state jurisdictions is highly desirable. In my judgment, the law should not allow a husband to recover damages for the death of his child when the wife-mother's negligence proximately contributes to the child's death at the same time disallow recovery if he and his wife send the child for a stay with its grandmother or aunt or reliable adult friend and such person's negligence contributes to the death of the child.

I perceive the majority view in this country now to be—

A plaintiff parent in a death case will be denied recovery if that plaintiff's negligence in caring for the child contributed to the child's death. The plaintiff is held to the exercise of reasonable care—in directly overseeing the child or in choosing, allowing, or causing another to do so. (Of course, in traditional agency situations and joint enterprise situations, the acts of his agents in caring for the child are his own acts.)

Since 1923 this evolution has led us to the rule stated in 65 C.J.S., Negligence, §163—

"Where a child sustains injury as the result of a concurring negligence of a third person and one in whose care he has been placed by a parent, the negligence of the custodian may be imputed to the parent. Where, however, the relationship of master and servant or principal and agent, with respect to the care, custody and control of the child, does not exist between the parent and the custodian, the negligence of the latter is not imputed to the parent."

The rule, as stated in C.J.S., supra, was applied in the recent case of Jeffrey v. City of Burlington, 256 N.C. 222, 123 S.E. 2d 500. In that case, a mother had entrusted her minor child to the mother's sister. While in the sister's custody, the child was killed. The Supreme Court of North Carolina, appropriate to the problem at hand, wrote—

"There is no evidence offered in the trial below tending to show that the relation of master and servant existed between . . . the custodian, and the parents of plaintiff's intestate or that the parents of the child had any reason to believe that the sister of the child's mother was not a reliable custodian of the children."

It may be that the law should fix upon every parent who brings an action for the death of his child responsibility for the conduct of the custodian to whom has been entrusted the care of that child

—whether the custodian be agent, employee, parent, relative, or friend and whether or not the plaintiff parent has exercised reasonable care in selecting the custodian. But such is not the law as it has evolved in the great majority of the states and as it has evolved in Florida.

Therefore, consistent with the development of the law in this country and in this state, for the defendant in our instant case to prevail on his contributory negligence plea he must show that the plaintiff mother (there being no master-servant relationship nor joint enterprise relationship) did not exercise reasonable care in entrusting the deceased child to the care of its grandmother (her mother) or that the plaintiff mother knew or reasonably should have known that the grandmother was incapable of properly supervising the child. There is no showing in the evidence that such was the case. Therefore, the negligence of the grandmother cannot be imputed to the mother and the plaintiff will recover damages for the death of her child proximately caused by the negligence of the defendant. The amount of damages to be recovered will be assessed in this court's final judgment to be entered this date.