396 So.2d 247 (1981)
Honesto ALEGRE et al., Appellants,
v.
Larry C. SHURKEY et al., Appellees.
No. UU-433.
District Court of Appeal of Florida, First District.
April 6, 1981.
Chalmers H. Barnes, of Barnes & Barnes, Jacksonville, for appellants.
Emory P. Cain, Jacksonville, for appellees.
SMITH, Judge.
The trial court dismissed appellants' complaint, for failure to state a cause of action, in which they sought damages for injuries received by their daughter in falling from a type of playground equipment known as "monkey bars" placed by appellees upon their property, and which was being used by appellants' minor child with the implied permission of appellees, since the child was in the yard playing with appellees' child.
The complaint is in two counts, the first seeking recovery upon a theory of negligence *248 in allowing the ground surface under the monkey bars to become hard-packed, and in failing to provide some cushioning surface for the prevention of injuries to children who might fall while playing on the monkey bars. The second count alleges substantially the same facts, but adds additional allegations based upon the attractive nuisance doctrine. Both counts contain essentially the same allegations with respect to the negligence of appellees. Paragraph 5 of count one provides:
5. Defendants Shurkey were negligent by failing to provide a surface under the monkey bars which could possibly have absorbed the impact of a child falling from a height of six to seven feet. Defendants knew or should have known that a packed earth surface presents a serious hazard for children who might fall while playing on the monkey bars. Defendants knew or should have known that falls from this type of playground equipment are a regular occurrence and defendants should therefore have provided some cushioning surface underneath the monkey bars.
As to Count One, appellants' argument focuses primarily upon a decision from the New York courts, Hunt v. Board of Education of Schenectady, 43 App.Div.2d 397, 352 N.Y.S.2d 237 (1974), in which the appellate court reversed the trial court's dismissal of the complaint, holding that a jury question was presented on the issue of whether or not the defendant school was negligent in placing a set of "monkey bars" over an artificially hardened, "black top" surface. However, we consider that the facts in this case are distinguishable from those in Hunt, and moreover, we further conclude that a determination of this question in Florida is controlled by Hillman v. Greater Miami Hebrew Academy, 72 So.2d 668 (Fla. 1954).
In Hillman, the injured child was playing on monkey bars constructed on the playground of a private school. The plaintiffs contended that the monkey bar equipment in question was negligently maintained, in that it was constructed so that it extended over the trunk of a coconut palm tree, and that the defendant had failed to keep it supervised by one competent to look after children of tender age to prevent them from falling from it. In affirming dismissal of the complaint for failure to state a cause of action, the court said (Id. at 669):
The vice of the complaint in question consisted in the fact that it sought to make appellee an insuror of the safety of minor children who used its playground equipment while the law contemplates that it furnish them a reasonably safe place to play commensurate with their knowledge and impulses. There is no allegation in the amended complaint that the monkey bar contained latent defects, that it was negligently constructed or operated or that there was any present danger that one of tender years could not readily comprehend. It was approved standard playground equipment and no amount of superintendence would have prevented the accident. (citations omitted)
We consider that the facts alleged in Hillman present an even stronger case than this one, and the trial judge correctly held that Count One was insufficient to state a cause of action. See also Elmore v. Sones, 140 So.2d 59 (Fla. 2nd DCA 1962); and Solomon v. City of North Miami Beach, 256 So.2d 399 (Fla. 3rd DCA 1972).
As to Count Two, the dismissal was correct because the complaint does not specifically allege, nor can it reasonably be inferred from facts pleaded, that the monkey bars presented an inherently dangerous condition, or a trap without which the attractive nuisance theory does not apply. See Edwards v. Maule Industries, Inc., 147 So.2d 5 (Fla. 3rd DCA 1962).
AFFIRMED.
SHIVERS, J., concurs. ERVIN, J., concurs in part and dissents in part.
ERVIN, Judge, concurring in part and dissenting in part.
While I agree with the majority in affirming the dismissal of Count II, I must *249 respectfully take issue with the majority's affirming the dismissal of Count I, which alleged, in effect, that Annette Alegre was lawfully on the premises by invitation,[1] and that while there she was injured by falling from monkey bars onto hard-packed earth, a condition created by defendants which they should have known was dangerous. It was not alleged that Annette, because of her age, was unable to comprehend the dangerousness of the condition.
On first impression, the majority's reliance on Hillman v. Greater Miami Hebrew Academy, 72 So.2d 668 (Fla. 1954), would appear controlling. Yet, it is difficult for me to determine on what basis the Hillman court decided the action before it was deficient. Did the court hold only that it was essential for the plaintiffs to allege that a child of tender years could not have comprehended the patent, dangerous condition of monkey bars perched from the trunk of a palm tree? Or did the court consider that because the plaintiff did not allege the existence of a latent defect in the equipment, the child should have been able to see what was there to be seen by the ordinary use of his senses, and if it was there to be seen, it was therefore deemed in law to have been seen?
If Hillman restricted its decision to holding only that the complaint was wanting due to its failure to allege the child's lack of awareness, it would seem that the complaint could have been amended to permit the plaintiffs to make such allegations. One case, involving an attractive nuisance, Petterson v. Concrete Construction, Inc., 202 So.2d 191, 197 (Fla. 4th DCA 1967), quashed on other grounds, 216 So.2d 221 (Fla. 1968), has recognized that a complaint containing a similar defect could be amended so that the necessary facts might be alleged. It has long been acknowledged that a child of tender years may be incapable of comprehending a patent risk and that a greater degree of care may be owed to the invitee-child by the business owner than to an adult of normal intelligence. See Burdine's, Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462 (1941); City of Jacksonville v. Stokes, 74 So.2d 278 (Fla. 1954); McCain v. Bankers Life & Casualty Co., 110 So.2d 718 (Fla. 3d DCA 1959). This rule was an exception to the patent danger doctrine, in effect at the time Hillman was decided, which stated that no duty was owed by the owner or possessor of land to an invitee in situations where the danger was obvious, reasonably apparent, or as well known to the person injured as it was to the owner or occupier. Matson v. Tip Top Grocery Co., 151 Fla. 247, 9 So.2d 366 (1942); Hall v. Holland, 47 So.2d 889 (Fla. 1950). And, those cases involving the exception generally held that the question of whether or not the child comprehended the risk was one for decision by a jury  not a judge. E.g. Burdine's, Inc. v. McConnell, supra; McCain v. Bankers Life & Casualty Co., supra. Even more significantly, it has been recognized that a three-year old child is incapable as a matter of law of conduct amounting to contributory negligence. Winner v. Sharp, 43 So.2d 634 (Fla. 1949).
If, however, Hillman required the plaintiffs to allege that the hazard was latent, I think it would have been impossible for the plaintiffs either in Hillman or in the case at bar to have made such allegations. The injury suffered by the child, as stated in the complaint before us, was attributable not to a defect hidden from the eye of one of normal intelligence, but was one rather attributable to the defendants' conduct  defendants who knew or should have known that the condition, the placement of elevated monkey bars directly above a hard, earth packed surface, presented a serious hazard to children playing on such equipment. Yet, I seriously doubt that a plaintiff-invitee is now required to plead that a latent defect caused his injuries. The no-duty doctrine, barring recovery if the danger was open, has now, in my judgment, been *250 superseded by the adoption of comparative negligence in Florida by Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), later amplified by Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977), as to assumption of the risk. Blackburn held that the affirmative defense of implied secondary assumption of risk is merged into the defense of contributory negligence, and that principles of comparative negligence apply in all cases where contributory negligence was formerly asserted. Thus, in any situation whenever implied secondary assumption of the risk is now raised, the reasonableness of the plaintiff's conduct in meeting a patent risk is an issue to be determined by the jury in its apportionment of the respective parties' negligence. Id. at 293. Yet, Blackburn also states that if assumption of risk has a distinct purpose apart from contributory negligence, its continued existence remains unaffected by the adoption of the comparative negligence doctrine. Id. at 289.
As Blackburn observes, assumption of risk involves two separate and distinct doctrines: primary and secondary assumption of risk. Primary assumption of risk is not an affirmative defense, but is a way of expressing the idea that if the defendant owes no duty to the plaintiff, he cannot be negligent, whereas secondary assumption of risk is an affirmative defense to an established breach of duty, and may be raised only when the plaintiff has voluntarily encountered a known and appreciated risk. Id. at 290-92. See also 2 F. Harper & F. James, Law of Torts, § 21.1 (1956). Certainly then, if the no-duty doctrine remains unaffected by Blackburn, an invitee simply cannot recover for injuries proximately caused by an obviously dangerous condition because no duty was owed to him by the occupier or landowner.
Nevertheless, an examination of those cases antedating the adoption of comparative negligence in Florida reveals no consistent pattern in their decisions. Many intertwined the separate doctrines of no-duty and assumption of risk in their reasoning. See Matson v. Tip Top Grocery Co., supra; Miller v. Shull, 48 So.2d 521 (Fla. 1950); Frederich's Market, Inc. v. Knox, 66 So.2d 251 (Fla. 1953). Others, on the contrary, have treated the obviousness of the danger as a question to be resolved by a jury and have permitted the cases to be tried under the usual theories of negligence and contributory negligence. See Jenkins v. Brackin, 171 So.2d 589 (Fla. 2d DCA 1965); Bars v. Morrison-Knudsen Co., 222 So.2d 445 (Fla. 4th DCA 1969); Harvey Building, Inc. v. Haley, 175 So.2d 780 (Fla. 1965). The latter cases, in effect, focus attention upon the knowledge of the condition which the landowner had, or with the exercise of reasonable care he should have had, notwithstanding the patent nature of the condition that ostensibly the invitee  had he been aware  should have perceived.[2] If those cases had been decided on a no-duty basis, there would be no issue of negligence to be considered by a jury since clearly, in the absence of duty, there can be no negligence.
While I have found no Florida cases which have explicitly adopted Section *251 343A[3] of the Restatement (Second) of Torts (1965), it is possible that those cases which failed to apply the no duty doctrine were influenced by it. Section 343A superseded the provisions of Section 340 to the original Restatement.[4] Comment f to Section 343A explicitly states that the occupier is not absolved from any duty owed to an invitee merely because the risk is patent. Note the following: "[T]he fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk... . It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." An evergrowing number of cases have adopted the provisions of Section 343A. See cases cited, Annot., 33 A.L.R.3d 230, 254-262, § 4[c] (1971). Additionally, an evergrowing number of Florida district courts of appeal opinions post-dating Hoffman and Blackburn have held that the obviousness of a dangerous condition is an issue of comparative negligence and is not an absolute bar to either an invitee's or a tenant's recovery. See Bennett v. Mattison, 382 So.2d 873 (Fla. 1st DCA 1980); Zambito v. Southland Recreation Enterprises, Inc., 383 So.2d 989 (Fla. 2d DCA 1980); Metropolitan Dade County v. Yelvington, 392 So.2d 911 (Fla. 3d DCA 1980); Grenier v. Central Bank and Trust Co., 391 So.2d 704 (Fla. 3d DCA 1980); Ferber v. Orange Blossom Center, Inc., 388 So.2d 1074 (Fla. 5th DCA 1980).
A similar conclusion was reached by a recent decision of the Texas Supreme Court, holding that the no-duty doctrine did not survive a former opinion of the court abolishing the doctrine of voluntary assumption of the risk. See Parker v. Highland Park, Inc., 565 S.W.2d 512 (Tex. 1978). In so deciding, the court noted that voluntary assumption of risk (volenti non fit injuria) involved two of the same elements as the no-duty doctrine: knowledge and appreciation of the risk; that because both doctrines were dependent upon the obviousness of the danger, both were inseparably intertwined, and once the volenti principle was abolished, the other necessarily collapsed. The court concluded that the reasonableness of the invitee's conduct would be determined under principles of contributory negligence, and as to cases controlled by the comparative negligence statute (Tex. Rev. Civ. Stat.Ann. art. 2212a), one who is contributorily negligent would nevertheless be entitled to have his negligence compared with that of the other participants to the event. Id. at 517.
Given the Texas court's analysis of the two doctrines, it is difficult to understand how no-duty may reasonably be said to endure in Florida. While Blackburn did not abolish the volenti doctrine[5] in its entirety, but only one of its categories as a separate defense, implied secondary assumption of risk, the elements inherent in implied primary assumption of risk are common also in implied secondary assumption of risk: the voluntariness of the exposure to the danger and the plaintiff's knowledge and appreciation of it. 23 Fla.Jur., Negligence, § 70 (1959). Moreover, the elements of knowledge and appreciation are essential to the application of the no-duty doctrine. Cf. Matson v. Tip Top Grocery Co., supra. Since the doctrinal underpinnings of implied *252 secondary assumption of the risk have been eroded as a separate defense, I fail to see the logic of any theory espousing no-duty as a bar to an injured invitee's right of action simply because he should have perceived the risk.
Nearly a year ago, in my special concurring opinion to Bennett v. Mattison, supra at 876, involving also a patent, obvious danger, I wrote that "[t]his is a murky area of the law... ." The majority's affirmance of the order below, and the opinions following Hoffman and Blackburn which persevere in applying no-duty, e.g., Kessler v. Gumenick, 358 So.2d 1167 (Fla. 3d DCA 1978); Vermont Mut. Ins. Co. v. Conway, 358 So.2d 123 (Fla. 1st DCA 1978); Ball v. Ates, 369 So.2d 1023 (Fla. 1st DCA 1979), all serve to reinforce my belief.[6] Unless, however, no-duty remains alive and well, the above decisions cannot be squared with Blackburn's rule of merger.
If the effect of Blackburn is as I believe it to be, then in all cases in which the obviousness of the danger is asserted as a defense, the reasonableness of the plaintiff's conduct in confronting the risk should now be determined by a jury  not a judge. Until the Supreme Court clarifies the issue, we apparently will continue to have some cases decided without benefit of a jury on the basis of no-duty, while others will be tried by juries under theories of negligence and comparative negligence.
NOTES
[1] While the child's status would normally be that of a licensee  not an invitee, see Sections 330 and 332, Restatement (Second) of Torts  Wood v. Camp, 284 So.2d 691 (Fla. 1973), has eliminated any distinction between invitees and invited licensees, applying to both the same standard of reasonable care owed by a landowner to invitees.
[2] According to Dean Page Keeton, such an approach is wide-spread among many courts. He states:

The actual result reached in many cases is inconsistent with the notion either that the occupier's duty is any way limited other than by the requirement of negligence or that there is such a defense as assumption of risk or volenti non fit injuria which is distinct from contributory negligence. Often in those instances there is no discussion either of assumption of risk or of the necessity for a breach of duty, the court being content to say that there was evidence sufficient to justify the findings of the jury on the issues of negligence and contributory negligence. Those results can be taken as some indication of dissatisfaction with the idea that a non-negligent customer should be denied relief simply because he chose to encounter a known danger caused by the occupier's negligent conduct. It is safe to say that in many such instances the defense argued the absence of any duty but the judge who wrote the opinion chose to ignore a discussion of the problem.
Keeton, Assumption of Risk and the Landowner, 22 La.Rev. 108, 114 (1961). (footnotes omitted)
[3] Section 343A(1) provides:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. (emphasis supplied)
[4] Section 340 merely reworded the no-duty doctrine, and provided: "The possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon, ..., if they know of the condition and realize the risk involved therein."
[5] The volenti doctrine covers three types of cases: (1) Those in which the plaintiff agrees expressly or impliedly to run the risk of harm; (2) those in which because the plaintiff knows of the danger, the defendant has done no wrong in causing it, and (3) those in which because the plaintiff knows of the danger, his act in voluntarily exposing himself to it is an act of contributory negligence and deprives him of the action. Salmond, Torts, 43 (8th ed. 1934).
[6] By analogy, the inconsistency of the various courts' approaches to slip and fall cases was aptly commented upon by Professor Green:

Courts are sometimes inclined to take the case into their own hands and direct a verdict or grant judgment n.o.v. They can, of course, do this on the basis of contributory negligence as a matter of law, but now and then a court prefers to base its judgment on assumption of risk. This is done on the basis that if the danger is open and obvious the defendant owed the plaintiff no duty. This is incompatible with good theory if in fact there was a duty to make the premises reasonably safe for the customer and the shopkeeper negligently failed to do so. In such a case the victim's conduct was simply contributing. It seems a contradiction in terms to say the shopkeeper owed the plaintiff no duty. Nevertheless some courts prefer to express their decision in terms of no duty and assumption of risk. It is believed they do so in order to escape criticism for taking the contributory negligence issue away from the jury and thus invading the jury's function. Doctrinal semanticism serves their psychological reaction.
Green, Assumed Risk as a Defense, 22 La.L. Rev. 77, 85 (1961).